RKUHN, J.
After an alleged work-related back injury, Wal-Mart Stores, Inc. paid workers’ compensation disability benefits to claimant, Sylvia Springfield, for various periods of time during which she was unable to work. After two physicians reported that Springfield was capable of performing light-duty work, Wal-Mart advised her that she was scheduled to return to work. When Springfield failed to return to work, Wal-Mart terminated her disability benefits. Springfield then filed a disputed claim for compensation. In answering the claim, Wal-Mart denied that Springfield had been injured in a work-related accident and asserted that she had no continuing work-related disability. The Office of Workers’ Compensation (OWC) ruled that Springfield had failed to establish a work-related accident and dismissed her claim. Springfield appeals. Although we affirm the OWC’s denial of benefits, we reach that conclusion based on a determination that Springfield failed to prove that she was unable to work when Wal-Mart terminated her benefits. Further, Springfield failed to establish that medical expenses incurred after the termination of benefits were related to her alleged work-related back injury.
I. FACTUAL AND PROCEDURAL BACKGROUND
Springfield began working for Wal-Mart in 1989 as a door-greeter. She was later transferred to work in the store’s garden center. Her job duties included stocking shelves, watering and displaying plants, condensing the plants when new inventory was received, helping customers, and serving as a cashier. Springfield testified that in 1992, she had a work-related accident that caused a back injury and disabled her from working for a period of time. She later returned to work in the garden center. On April 22, 1994, Springfield reported to her supervisor, Janet Johannsen, that while working, she suddenly felt pain similar to what she had experienced in 1992. | aSpringfield testified that she reported experiencing this pain while bending down to move some plants to a lower shelf to make room for new inventory on the higher shelf. Johannsen testified that Springfield reported that she did not know how she had hurt herself but guessed that she hurt herself while pulling on a hose or bending over to pick up the hose. Johann- *738 sen did not recall that Springfield had mentioned anything about moving plants. Johannsen filled out an injury report, documenting that Springfield thought she hurt herself by pulling on the hose and reporting that there were no witnesses.[1] Several weeks later, when Springfield filled out a workers’ compensation statement regarding the incident, she reported that she was injured while moving and lifting plants in the greenhouse.
On the day of the alleged incident, Jo-hannsen sent Springfield to the E-Med Clinic. Dr. Leonard Cheramie examined Springfield and diagnosed a lumbar strain. He advised that she should receive further medical attention before returning to work and scheduled an appointment with Dr. Kenneth Cranor, an orthopedist.
On April 16, 1994, Springfield was examined by Dr. Cranor, who also diagnosed a lumbar strain and concurred that she should not immediately return to work. Springfield’s back pain persisted, and Dr. Cranor treated her conservatively, prescribing the use of a lumbar corset for support. At the end of May 1994, Dr. Cranor reported that Springfield exhibited symptoms of degenerative changes in the lower back and advised that Springfield 'could return to light-duty work. Wal-Mart paid Springfield disability benefits for the period of time that she was not able to work.
By December 14, 1994, Dr. Cranor found that Springfield’s back problem was worse because she had bursitis in her leg, and he restricted her to light duty work for | ¿four hours each day. Less than a week later, Dr. Cranor advised Springfield not to return to work and Wal-Mart resumed its payments of disability benefits. Springfield returned to Dr. Cranor’s office frequently during early 1995, reporting pain in her lower back. Dr. Cranor noted that her symptoms of lumbar nerve root compression syndrome were most likely caused by a herniated disc. He prescribed limited activity and when she began to improve, he prescribed walking and a home-exercise program to strengthen her back. During March 1995, Dr. Cranor released Springfield to return to work on a light-duty basis for four hours each day. Upon her return, she worked in one of the clothing departments where her duties included hanging clothes and working in a fitting room. A few months later, Dr. Cranor noted Springfield was gradually getting better and released her to work for six hours each day with no heavy lifting. By the end of 1995, Dr. Cranor noted that Springfield was continuing to experience discomfort in her lower back and sought a referral for an additional medical opinion.
Dr. Cranor referred Springfield to Dr. John Clifford, a neurosurgeon, who first examined her in November 1995. Dr. Clifford found that Springfield’s complaints were due to a “mechanical type of low back pain.” He advised that she continue her exercises. Springfield continued working until April 15, 1996, when she returned to Dr. Clifford reporting persistent back pain and tingling and numbness in her calves. Dr. Clifford noted muscle spasms and a restricted range of motion and found that Springfield was disabled from working until she could be further evaluated. An MRI exam showed moderately severe spinal canal stenosis at the L-4/5 level. Based on this finding, Dr. Clifford found that Springfield should not continue working on a regular basis and referred her to Dr. Morton Langston for a rehabilitation *739 evaluation. Once again, Wal-Mart resumed its payment of disability benefits.
| Jn July 1996 and for the next several months, Dr. Langston treated Springfield conservatively using physical therapy, various anti-inflammatory drugs, and trigger point injections. By May 1997, Dr. Lang-ston found that Springfield’s diagnostic testing showed findings of mild severity and that she was able to return to light-duty work. Again in October 1997, he recommended that she could return to work, reporting that she had reached “maximal medical improvement.” Dr. Langston noted that Springfield was not willing to return to work because she feared that it would cause a relapse and increase her pain. At that point, Dr. Langston referred Springfield back to Dr. Clifford for a neurological re-evaluation.
Dr. Clifford re-examined Springfield on November 3, 1997, and reported that her examination was “essentially normal.” His notes reveal the following pertinent information regarding her medical condition:
After reviewing all of [Springfield’s] diagnostic studies to date, I feel that this far removed from her accident, and if she had significant pathology, she should have significant findings on her examination, which she does not.... Her history suggests to me some element of degenerative disc disease, which she may have, but certainly, if this were giving her sufficient problems to prevent her from working, there should be significant findings on her physical examination, which there are not.
My sense is that this patient has long since reached maximum medical improvement. She has a residual disability of less than 5% of the body as a whole, and I feel that she is employable in her former occupation, which she explained to me as someone who would be required to hang clothing on clothes racks.
On November 20, 1997, Concentra Managed Care, Inc., the company who had been managing Springfield’s medical care and . return-to-work services for Wal-Mart’s workers’ compensation insurer, informed Wal-Mart that both Drs. Clifford and Langston had indicated that Springfield could return to her fitting-room work. Based on that information, Ray Black, Wal-Mart’s store director, sent a letter dated December 4, 1997 to Springfield informing her that she had been released to return to light-duty | fiwork. A work schedule was also enclosed that indicated Springfield was scheduled to work on December 22, 1997. The letter further advised that if she did not return to work on December 22, 1997, Wal-Mart would terminate her employment.
After Springfield received this letter, she requested an immediate visit with Dr. Langston, who saw her on December 10, 1997. Springfield complained of tightness in her lower back and right lower extremity and expressed concern regarding her proposed return to work. Dr. Langston again reported that he felt Springfield had reached maximum medical improvement and that she should try to return to work to evaluate her ability to work in a sedentary/light-duty position.
Springfield did not return to work as proposed by Wal-Mart and her disability benefits were terminated on December 23, 1997. As of that date, Wal-Mart had paid $16,793.01 in indemnity benefits and $26,224.99 in medical expenses.
On February 4, 1998, Springfield returned to Dr. Clifford complaining of pain in her back and leg. Dr. Clifford stated in his progress notes, “[0]nce again she has complaints of pain without any findings.” He noted that she was very upset because she had been told that she was scheduled *740 to return to work. Dr. Clifford further addressed Springfield’s symptoms as “consistent with someone with degenerative disc disease” and stated that he felt that she was not a candidate for surgery. He also confirmed that he still believed that she was employable in light duty or sedentary type work. Springfield filed her disputed claim for compensation in December 1998.
In January 1999, Springfield sought a second neurosurgical opinion from Dr. Anthony S. Ioppolo. After reviewing an updated MRI scan of the lumbar spine, Dr. Ioppolo diagnosed a “significant disc rupture ... on the right side at L4 with significant compression of the nerve root.” Although Dr. Ioppolo suggested that additional conservative treatment was available, Dr. Ioppolo advised Springfield that |7he believed that surgery would ultimately be needed. Springfield was later referred to Dr. Jorge E. Isaza, who performed a lumbar laminectomy in August 1999. As of May 2000, Springfield continued to complain of persistent lower back pain, and Dr. Isaza concluded that Springfield suffered from degenerative joint disease. Dr. Isaza reported that Springfield will have permanent physical limitations, and he restricted her from engaging in prolonged sitting or standing and from lifting over 30 pounds. He did not perform a disability evaluation or address whether Springfield was able to work.
Following a hearing addressing whether Springfield was entitled to receive disability benefits after December 23, 1997, the OWC determined that Springfield had failed to establish a La. R.S. 23:1021(1) “accident.” Springfield appeals alleging that the trial court erred by: 1) holding that she failed to prove a work-related accident; 2) refusing to award disability benefits, medical and related travel benefits, and vocational rehabilitation; and 3) denying penalties and reasonable attorneys’ fees.
II. ANALYSIS
Initially, a workers’ compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury.[2] Clausen v. D.A.G.G. Const., 2001-0077(La.App. 1st Cir.2/15/02), 807 So.2d 1199, 1201, writ denied, 2002-0824 (La.5/24/02), 816 So.2d 851. Further, a claimant who seeks workers’ compensation benefits on the basis of being temporarily totally disabled must prove by clear and convincing evidence, without taking pain into consideration, that he is unable to engage in any employment or selfjemploymentg. La. R.S. 23:1221(1)(c);[3] Bolton v. Grant Parish School Board, 1998-1430 (La.3/2/99), 730 So.2d 882, 885.
*741 A. Work-Related Accident
In the present case, Wal-Mart urged that Springfield was not credible because she offered two different versions of her alleged work accident. Further, Wal-Mart argued that Springfield’s self-serving testimony was insufficient to meet her burden of establishing that an accident occurred. The OWC apparently accepted this reasoning.
After examining the record, it is apparent that if Springfield was injured while performing her work duties, she initially may have had difficulty pinpointing a specific event that caused her injury due to the repetitive nature of her work in the garden center. But because we find that Springfield failed to establish that she was unable to work when Wal-Mart terminated her benefits in December 1997, we find it appropriate to pretermit an analysis of whether Springfield established a work-related accident.
B. Disability Benefits
We next address whether Springfield established by clear and convincing evidence that she was unable to work. Springfield testified that she was unable to return to work in December 1997, or anytime since then. She related that she was experiencing pain from muscle spasms when Drs. Clifford and Langston reported that she was able to return to light-duty work. She also stated, “At my age plus with me | flhurting like I am now, no, I don’t believe I could work.” She further testified that she did not believe there would ever be a job at Wal-Mart to which she could return.
Springfield’s testimony that she was unable to return to work in December 1997 is not supported by the medical evidence. Drs. Clifford and Langston both testified that Springfield had reached maximum, medical improvement and was able to return to work prior to December 1997. Dr. Langston’s medical opinion was that Springfield was able to return to light-duty work as early as May 1997. When Dr. Clifford examined Springfield in November 1997, he determined that she was “employable in her former occupation.” Both doctors had treated Springfield for significant periods of time prior to rendering their opinions. We conclude that the medical records of these doctors establishes that Springfield was capable of returning to sedentary or light duty employment.
On appeal, Springfield complains that she was unable to get clarification as to what type of work the Wal-Mart managers had in mind for her when she returned to work. Debbie Landry, one of Wal-Mart’s personnel managers, testified that when the “return-to-work” letter was sent to Springfield, Wal-Mart’s light duty jobs included door greeter, working in the fitting rooms, hanging clothes, answering the telephone, filing and helping with paperwork. Although the return-to-work letter did not describe these available jobs or specify the position in which she would be placed, Springfield was not entitled to refuse to return to work on that basis. Accordingly, we conclude that the record does not establish by clear and convincing evidence that Springfield was temporarily totally disabled after December 23, 1997. Springfield failed to prove that she was entitled to receive additional indemnity benefits.
|inC. Medical and Related Travel Expenses
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. La. R.S. 23:1203(A); Parfait v. Gulf Island Fabrication, Inc., 1997-2104 (La.App. 1st Cir.1/6/99); 733 So.2d 11, 19. The right to reimbursement for medical expenses is separate and distinct from the right to compensation. Id.
*742 In order to recover medical expenses under La. R.S. 23:1203, the claimant must prove that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Patterson v. Long, 96-0191 (La.App. 1st Cir. 11/8/96); 682 So.2d 1327, 1334, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499. With respect to Springfield’s medical and related travel expenses incurred after December 23, 1997, plaintiff failed to establish that these expenses were related to her alleged 1994 back injury. The medical evidence includes multiple references to Springfield’s symptoms being related to degenerative disc or joint disease and otherwise fails to establish that her medical treatment after December 1997 was related to the alleged April 1994 back injury. Thus, Springfield has not established that she is entitled to recover additional medical and travel expenses incurred after December 1997.
D. Vocational Rehabilitation and Penalties and Attorneys’ Fees
Springfield did not brief her assignments of error in which she asserts that the OWC erred by failing to award vocational rehabilitation and penalties and attorneys’ fees. Thus, we may properly consider these assignments of error as abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. Nonetheless, we recognize that pursuant to La. R.S. 23:1226A, an employee is entitled to rehabilitation services if he suffers an injury that precludes his earning wages equal to or in excess of his pre-injury wage. Because we find that Springfield failed to establish that she was unable to earn Inwages equal to what she earned prior to her alleged 1994 injury, we find Springfield has failed to establish that she is entitled to rehabilitation. Collins v. Family Dollar Stores, Inc., 1999-0622 (La.App. 1st Cir.5/12/00), 760 So.2d 1210, 1217, writs denied, 2000-2356, 2000-2363 (La.11/13/00), 773 So.2d 727.
Likewise, since Springfield has not established that she is entitled to recover any workers’ compensation or medical benefits, she is not entitled to recover penalties or attorneys’ fees. La. R.S. 23:1201.
III. CONCLUSION
Springfield failed to establish by clear and convincing evidence that she was temporarily totally disabled after December 1997. She also failed to prove that the medical expenses she incurred after this date were related to her alleged 1994 injury. Additionally, she has failed to establish that she is entitled to rehabilitation or penalties and attorneys’ fees. For these reasons, the OWC ruling dismissing Springfield’s claim is affirmed. The costs of this appeal are assessed to Springfield.[4]
AFFIRMED.

. Johannsen, who was married when she filled out the injury report, signed the report using the surname of Young.

. La. R.S. 23:1021(1) defines "accident” as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.”

. At the time of Springfield's injury in 1994, La. R.S. 23:1221 (l)(c) provided as follows:
[Cjompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lol employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

. Although Springfield brought this appeal in forma pauperis, the costs of this unsuccessful appeal may be assessed against her. Rochon v. Blackburn, 1997-2799, p. 6 (La.App. 1st Cir. 12/28/98), 727 So.2d 602, 605, n. 6.