862 So.2d 1001 (2003)
Jodie COOPER
v.
ST. TAMMANY PARISH SCHOOL BOARD.
No. 2002 CA 2433.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
Rehearing Denied January 22, 2004.
*1004 William R. Mustian, III, Stanga & Mustian, Metairie, for Plaintiff-Appellant Jodie Cooper.
Harry P. Pastuszek, Jr., Mandeville, for Defendant-Appellee St. Tammany Parish School Board.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
In this workers' compensation case, Jodie Cooper appeals a judgment denying her claims for temporary total disability benefits or, in the alternative, for supplemental earnings benefits, as well as for penalties and attorney fees. We affirm.

FACTUAL BACKGROUND
Jodie Cooper, a lunchroom technician at Lee Road Junior High School in Covington, whose employer was the St. Tammany Parish School Board, injured her left knee in a job-related accident on September 27, 1999. She worked until November, but in December 1999, arthroscopic surgery was performed to repair torn meniscus cartilage and open knee surgery was performed to remove a cyst from behind the knee. After a recovery period that included physical therapy and work hardening, Ms. Cooper returned to her job in the school cafeteria on May 11, 2000.[1] At this point, her doctor began periodic injections to lubricate the knee, and she continued taking anti-inflammatory medications. Her employer paid all medical expenses and paid temporary total disability benefits until she returned to work.
Although her doctor had limited her to occasional standing and walking and occasional lifting up to thirty pounds, Ms. Cooper's cafeteria position required constant standing and repetitive heavy lifting. She also had a temporary after-school-care job at another school, which was relatively light duty. During the summer of 2000, she worked another temporary job for the school system at a summer camp in a position that did not require any lifting and was within her physical limitations. Ms. Cooper worked at her cafeteria job the entire following school year, August 2000 to May 2001, but continued to experience pain and discomfort related to her knee injury.
On March 22, 2001, Ms. Cooper filed a disputed claim for compensation. She sought an increase in and reinstatement of wage benefits, which had terminated upon her return to work in May 2000. The claim also requested disability status, payment for disfigurement, penalties, and attorney fees.
*1005 In May 2001, over her and her supervisor's objections, Ms. Cooper's work day was increased from six hours per day to seven. When the next school year began in August 2001, Ms. Cooper returned to work. However, on September 5, 2001, she left and did not return, claiming she could no longer do the job because of pain. When she did not return to work, the school principal, Dennis Krieger, began termination proceedings based on her alleged physical inability to perform the work required by her job position. After a hearing, she was terminated from her job in November 2001. The termination included her cafeteria job, as well as the temporary positions in after-school care and the summer camp. She was not offered vocational rehabilitation or any other job with less demanding physical conditions.
Ms. Cooper's workers' compensation case was tried June 5, 2002, and judgment was rendered June 25, 2002. The judgment stated Ms. Cooper was entitled to continued reasonable and necessary medical treatment as prescribed by her treating physicians with respect to her September 1999 knee injury, and awarded her 25 weeks of benefits for disfigurement due to scarring, subject to a credit for benefits previously paid.[2] Her claims for temporary total disability benefits or, in the alternative, supplemental earnings benefits were denied, as were her claims for penalties and attorney fees. Her motion for new trial was denied in a judgment rendered August 26, 2002. Ms. Cooper appealed both judgments.
She assigns as error the court's failure to award supplemental earnings benefits, given the evidence that she is unable to earn 90 percent of her average monthly wage due to her job-related knee injury. She also assigns as error the court's failure to award temporary total disability benefits, because she is in need of a period of vocational rehabilitation. Finally, she claims the court erred in failing to award penalties and attorney fees, when her employer's only defense to her claim was a frivolous prescription argument.

STANDARD OF REVIEW
In a workers' compensation case, as in other cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dep't of Corr., 93-1305 (La.2/28/94), 633 So.2d 129, 132; Kennedy v. Security Indus. Ins. Co., 623 So.2d 174, 175 (La.App. 1st Cir.), writ denied, 629 So.2d 389 (La.1993). The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880, 882 (La.1993); Boudreaux v. Angelo Iafrate Const., 02-0992 (La.App. 1st Cir.2/14/03), 848 So.2d 3, 6.
In applying this standard, the appellate court must determine not whether *1006 the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Where there are two permissible views of the evidence, a fact-finder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556; Killett v. Sanderson Farms, 01-0277 (La.App. 1st Cir.5/10/02), 818 So.2d 853, 858.

SUPPLEMENTAL EARNINGS BENEFITS (SEB)
The purpose of SEB is to compensate the injured employee for wage-earning capacity she has lost as a result of her accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La. 1993). Entitlement to SEB is provided by Louisiana Revised Statute 23:1221(3), under which the threshold prerequisite to recovery is that the employee's injury results in her inability to earn wages equal to ninety percent or more of the wages she was earning at the time of the injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). The injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount in any employment. Id. A claimant is not entitled to SEB when her inability to earn wages equal to ninety percent of her pre-injury wages is due to circumstances other than her work-related injury. Smith v. J.E. Merit Constructors, Inc., 01-2824 (La.App. 1st Cir.11/08/02), 835 So.2d 749, 754. A claimant's testimony that she is no longer able to return to her preinjury employment, without more, is insufficient to prove entitlement to SEB. Rapp v. City of New Orleans, 95-1635 (La.App. 4th Cir.9/18;96), 681 So.2d 433, 438, writ denied, 96-2925 (La.1/24/97), 686 So.2d 868. Whether a claimant has carried her burden of proof is a question of fact to be determined by the workers' compensation judge. Williams v. Wal-Mart Stores, 00-1347 (La.App. 1st Cir.9/28/01), 809 So.2d 294, 298.
If the employee successfully bears her burden of proving her disability and resultant inability to earn at least 90 percent of her pre-injury wages, the burden shifts to the employer who, to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered or available to the employee in her or the employer's community or reasonable geographic region. See Daigle, 545 So.2d at 1008-09; Carignan v. Louisiana Compressor Maint, Co., 02-0180 (La.App. 1st Cir.12/30/02), 836 So.2d 476, 480. Then, if the employee further establishes, by clear and convincing evidence, that solely as a consequence of substantial pain, she cannot perform the employment that is offered, tendered, or available, she shall be deemed incapable of performing such employment and be entitled to SEB. LSA-R.S. 23:1221(3)(c)(ii).
The parties stipulated at trial that Ms. Cooper was injured at work and that the correct compensation rate for her weekly wage benefits was $171.80. All of her medical bills attributable to the work-related knee injury were paid, and she was paid temporary total disability benefits for twenty-six weeks. Those benefits terminated upon her return to work on May 11, 2000, at the same rate of pay that she had prior to her injury.
*1007 In oral reasons, the court explained its conclusions concerning SEB, stating:
Ms. Cooper was no worse for wear with respect to her knee condition on September 5th, 2001, the day she quit work, than she was 16 months earlier when she began work after her surgery on May 11th, 2000. The only significant change was the requirement by the employer that Ms. Cooper work seven hours per day as opposed to the six hours per day she had been accustomed to.
Dr. Van Deventer treated Ms. Cooper for the entire period during which she returned to work after surgery. The medical evidence of record falls short of supporting the Plaintiff's position that she is indeed unable to earn 90 percent of her preinjury wages as a result of a loss of earning capacity directly related to the knee injury.
Having reviewed the record in its entirety, we find there is evidentiary support for the trial court's factual findings and its conclusions are reasonable. Ms. Cooper's treating physician, Dr. Paul M. van Deventer, stated that when she initially returned to work in May 2000, she was working approximately seven hours per day and was having activity-related pain with her knee, some swelling, and some low back pain. Because he "felt a lot of her symptoms were from the underlying arthritis," he began Synvisc injections to lubricate the knee joint. He said he felt she had reached her point of maximum medical improvement at that time, but the injections might give her some increased relief. She returned to him in March 2001, still having occasional low back pain, but the knee examination was improved, in that there was no swelling. The injections and continued home physical therapy were providing her with some relief, but "she had findings consistent with underlying arthritis in the knee." When Ms. Cooper came back to him in September 2001, she "felt that she just could not tolerate the physical demands of her work," which was causing her significant discomfort in the knee. Again, Dr. van Deventer noted findings attributable to the arthritis in the knee and treated it symptomatically with a cortisone injection. His overall evaluation of her condition was basically unchanged.
On September 5, 2001, Dr. Van Deventer outlined the reasonable limitations on Ms. Cooper's activity, stating in a letter to her employer's insurer, "At this point in time feel it is reasonable for Ms. Cooper to continue the duty that I have outlined in the past, namely occasional standing and walking, no limitations regarding sitting, occasional lifting of 25 to 30 pounds with frequent lifting of 10 pounds." He said these recommendations were the same as when she initially returned to work.[3] Dr. van Deventer did not say in May 2000 or in September 2001 that Ms. Cooper was totally unable to work at some job. He assigned her a 20 percent lower extremity impairment and an 8 percent whole body impairment, "based on the combined underlying degenerative arthritis and her meniscal injury," each of which contributed 50 percent to her condition. In his notes concerning Ms. Cooper's follow-up visit to him on September 6, 2001, Dr. van Deventer stated that, "unfortunately, due to her arthritis in her knee, [she] has been unable to fully participate in her work." Dr. van Deventer's testimony indicated that, to whatever degree she was unable to perform her job duties, at least half of her difficulty was due to the underlying arthritic *1008 condition, rather than to the work-related knee injury.
The evidence supports Ms. Cooper's contention that knee pain precluded her from continuing the type of work she was doing as a lunchroom technician. The demands of that job exceeded the restrictions noted by Dr. van Deventer. However, Ms. Cooper testified that the job duties at her temporary positions were not so physically demanding that she experienced discomfort as a result of those jobs. Although she was not given the opportunity to continue in those jobs, her testimony indicates that she was capable of some employment. Her only statements concerning her inability to obtain other jobs were that she had called about a couple of home "sitting" jobs, but those required lifting that she could not do. She also said it appeared no one wanted to hire her, because she was a "risk" in her physical condition.
Although this is a close case, we are forced to agree with the trial court that this evidence simply falls short of satisfying Ms. Cooper's burden of proof that she could not earn 90 percent of her pre-injury wages. She may not have been able to continue in her previous position, but she had the burden of proving, by a preponderance of the evidence, that her injury resulted in her inability to earn that amount in any employment. Having failed to carry that initial burden of proof, the burden never shifted to her employer to establish that she was physically able to perform some job that was offered or was reasonably available to her. Therefore, we find no error in the trial court's conclusion that Ms. Cooper did not prove she was entitled to SEB.

TEMPORARY TOTAL DISABILITY (TTD) and REHABILITATIVE SERVICES
Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not the same or one similar to that in which the employee was customarily engaged when injured. LSA-R.S. 23:1221(1)(a) and (2)(a); Joseph v. J.E. Merit Constructors, Inc., 01-1666 (La. App. 1st Cir.6/21/02), 822 So.2d 72, 77, writ denied, 02-2295 (La.4/4/03), 840 So.2d 1201; Johnson v. Aetna Cos. & Sur. Co., 422 So.2d 1187, 1189 (La.App. 1st Cir. 1982), writ denied, 429 So.2d 127 (La. 1983). When the employee is not engaged in any employment or self-employment, in order to be entitled to TTD benefits, the employee must prove by clear and convincing evidence that she is physically unable to engage in any employment or self-employment, including employment while working in any pain. LSA-R.S. 23:1221(1)(c); Atwood v. Swing Timber, Inc., 34,045 (La.App. 2nd Cir.12/15/00), 774 So.2d 1140, 1145, writ denied. 01-0543 (La.5/11/01), 792 So.2d 733. An employee is not entitled to TTD benefits, despite her complaints of pain, when her treating physician indicates she can engage, at a minimum, in light duty work. Bolton v. Grant Parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882, 885 (per curiam). While the workers' compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant's burden. Id.
When an employee has suffered an injury covered by worker's compensation law that precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. LSA-R.S. 23:1226(A). The goal of such services is to return a disabled worker to work at some form of employment, with a minimum of retraining, as soon as possible after an injury occurs. LSA-R.S. 23:1226(B)(1). To be entitled to rehabilitation *1009 services, the employee must first prove that her work-related injury precluded her from earning wages equal to wages earned prior to the injury. Springfield v. Wal-Mart # 1266, 01-2543 (La. App. 1st Cir.11/8/02), 835 So.2d 736, 742.
Ms. Cooper claims she is entitled to reinstatement of TTD benefits during a period of vocational rehabilitation. However, the facts of this case simply do not meet the legal requirements for such benefits. It is clear that Ms. Cooper's TTD benefits were appropriately terminated when she returned to work in May 2000, since her disability status had ceased. The physical restrictions placed on her by her doctor at that time and at all times since that date do not preclude all forms of employment, and her own testimony and post-accident experience indicate she was and is capable of working in some capacity. Therefore, her employer was not required to reinstate TTD benefits when she stopped working. Furthermore, she received physical therapy after her surgery and was able to return to her pre-injury employment at wages equal to what she earned prior to her injury. Accordingly, no further rehabilitative services were required. Ms. Cooper simply failed to establish that she was unable to earn wages equal to what she earned prior to her injury. Therefore, the trial court did not err in denying rehabilitative services.

PENALTIES AND ATTORNEY FEES
Penalties and attorney fees are recoverable under LSA-R.S. 23:1201(F) if the employer or insurer fails to commence payments of benefits timely or to pay continued installments or medical benefits timely, unless the claim is reasonably controverted.[4] Attorney fees, but not penalties, are recoverable under LSA-R.S. 23:1201.2 if the employer or insurer arbitrarily and capriciously discontinues payment of benefits due.[5] These statutes provide for imposition of penalties and attorney fees to discourage indifference and undesirable conduct by employers and insurers, and are essentially penal in nature. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Canizaro v. Tangipahoa Parish School System, 02-1913 (La.App. 1st Cir.8/20/03), 853 So.2d 741, 744.
Ms. Cooper claims her employer's prescription defense was frivolous, and she is therefore entitled to penalties and attorney fees under either or both of the above statutes. Under the facts of this case, she is not entitled to recover such damages under LSA-R.S. 23:1201(F), because her employer timely paid all medical expenses and timely commenced and continued payment of TTD benefits until Ms. Cooper returned to work. With reference to LSA-R.S. 23:1201.2, the employer's decision to discontinue payment of benefits in May 2000 was required by her return to work, and thus was not arbitrary and capricious.
In addition, we find that her employer's refusal to recommence or reinstate benefits at any time after her disputed claim was filed was reasonable. Ms. Cooper actually had no actionable claims in March 2001 when she filed for benefits; all her medical expenses were being paid and she was back at work earning her full preinjury *1010 wages in her permanent position and in two temporary, part-time positions. At that time, she simply was not entitled to any benefits at all, and to refuse payment could not have been unreasonable, arbitrary, or capricious.[6] When she later left her employment and then was terminated from her position, her employer had her doctor's evaluation of her condition indicating she was not totally disabled. Therefore, the refusal to reinstate TTD benefits was justified. Although SEB might have been available, Ms. Cooper had to establish her entitlement to such payments by demonstrating an inability to earn at least 90 percent of her pre-injury wages. Even when given the opportunity to present this claim to the trial court, she failed to carry her burden of proof. We conclude the trial court did not err in failing to impose penalties and attorney fees on the employer, when the employer did not owe any additional benefits. See Springfield, 835 So.2d at 742.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Ms. Cooper.
AFFIRMED.
NOTES
[1] The record indicates this may have been the last week of school before the summer vacation.
[2] Because she had already been paid 26 weeks of wage benefits, this award was completely offset by the credit.
[3] We note, however, that the records from his office include a May 8, 2000 notation on a telephone message to Ms. Cooper, stating the instructions given to patient were, "RTW @ no restrictions 5/11/00."
[4] LSA-R.S. 23:1201(F) has since been amended by 2003 La. Acts, No. 1204.
[5] LSA-R.S. 23:1201.1 was repealed by 2003 La. Acts, No. 1204.
[6] Additionally, although benefits may have been payable at that time for scarring and disfigurement payments that had already been paid for TTD sufficed to fully offset the maximum available for such benefits, so nothing further was due for this claim.