JUDE G. GRAVOIS, Judge.
 

 |2The plaintiff, Delilah Forbes, has appealed the judgment in favor of the defendant, Metropolitan Developmental Center, in this workers compensation suit. For the reasons that follow, we affirm the judgment of the trial court.
 

 FACTS
 

 On June 22, 2006, Ms. Forbes filed a Disputed Claim for Compensation against her employer Metropolitan and its insurer/administrator, the State of Louisiana Office of Risk Management. Ms. Forbes was employed as a resident specialist at Metropolitan, a home for severely disabled people. In her claim, she alleged that she injured her hand on September 2, 2004 while picking up a patient, that her wage benefits were terminated on March 17, 2006, and that vocational rehabilitation was not offered. She sought supplemental earnings benefits as well as penalties and attorney fees.
 

 Metropolitan filed an answer asserting that Ms. Forbes was not entitled to supplemental earnings benefits, was offered med
 
 *379
 
 ical rehabilitation services, and Rthat the termination of Ms. Forbes’ benefits was justified by her medical status as reported,
 

 Following the denial of the defendant’s Motion for Summary Judgment, the matter proceeded to trial.
 

 At trial, Ms. Forbes testified that she had worked at Metropolitan for seven years prior to the accident. Her duties included bathing, feeding and transportation of patients. The patients in the facility ranged in age from 25 to 60 years old and their weight ranged from 90 to 300 pounds. The patients that Ms. Forbes cared for were completely incapable of caring for themselves. Ms. Forbes explained that the ideal ratio was four patients to each caretaker but because they were often short staffed, she took care of many patients without assistance. Some of these patients had to be bathed two times per day. They all needed their diapers changed regularly. As such, her job required lots of lifting. Ms. Forbes testified that she did not always have assistance in lifting patients.
 

 In her claim, Ms. Forbes alleged that she injured her right hand while placing a patient in a wheel chair after bathing the patient. She reported the injury to her supervisor and her hand was wrapped in an Ace bandage. She went to the doctor the next day because her arm was swollen. She was given a brace and medication. She returned to work on October 14, 2004 and was placed in a position working with aggressive patients. She only worked in this position for one day because she was fearful of the patients. She returned to work on October 29, 2004 and was placed on light duty in the kitchen. In this position, she chopped food and had to lift crates of milk and pans of food out of the freezer.
 

 Ms. Forbes continued working on light duty until March 2, 2005. On March 3, 2005, she underwent surgery on her right hand to repair a ruptured ligament and carpal tunnel syndrome. The surgery was performed by Dr. Kearny Robert. Ms. UForbes testified that although Dr. Robert released her to return to work, she did not attempt to do so because she knew that she would not be able to perform her duties due to the pain and loss of motion in her fingers, hand and arm.
 

 Ms. Forbes testified that she was unable to bathe herself because when she gets into a bathtub, her right side “goes numb”. Also, her hand shakes and she is unable to button buttons. Removing clothes from the washing machine causes pain. She is unable to wash dishes because she “can’t handle pots”.
 

 After surgery, Ms. Forbes continued receiving treatment from Dr. Robert. She later sought treatment from other physicians because she felt Dr. Robert did not help her. Dr. Robert told her that her arm would never be the same and that therapy would not help her. She visited Dr. Kenneth Adatto on four occasions and later went to the LSU clinic.
 

 On cross-examination, Ms. Forbes asserted that Dr. Robert’s report stating that she was very comfortable using her wrist and had full range of motion was not true. Ms. Forbes further claimed that Dr. Robert lied when he stated she could move her thumb when she was distracted. She claims, rather, that she never could raise her thumb. Ms. Forbes denied that Dr. Robert told her she was self-limiting on the functional capacity evaluation (FCE). She stated that she did the best she could on this evaluation.
 

 Kim Witherspoon, an expert in the field of occupational therapy and a certified hand therapist, testified that she performed the FCE on Ms. Forbes. She explained that the FCE is a test per
 
 *380
 
 formed to determine a person’s level of functioning as a whole, not just the injured extremity. It includes but is not limited to testing as to: 1) strength, i.e., how much the patient can lift, push, pull, carry; 2) positional tolerance, i.e., how long the patient can sit or stand; and 3) mobility, i.e., climbing and squatting. The test lasts three to four hours. The patient is instructed | Rto do his best and to reach the maximum level before stopping the particular task. Ms. Forbes attempted every task requested but according to Ms. With-erspoon, she “self-limited” — that is, she stopped several tasks before Ms. Wither-spoon was able to observe objective signs that she had reached her safe maximum level. Ms. Witherspoon felt that Ms. Forbes had self-limited on eight of the seventeen tasks tested or 47%. This affected the validity of the results of the FCE. Specifically, according to Ms. With-erspoon, Ms. Forbes was better at lifting at the end of the test rather than at the beginning, she did not use her left arm which resulted in exaggerated difficulty with lifting, she walked slowly, and she stopped carrying with her left hand because she said it caused pain in her right hand. Further, Ms. Forbes scored higher in ladder climbing than in stair climbing. This is inconsistent with her complaints because ladder climbing requires more use of the arms than stair climbing. The written report for the FCE was admitted into evidence and corroborates the testimony of Ms. Witherspoon.
 

 Ms. Witherspoon opined that based on the FCE, there is no reason why Ms. Forbes cannot bathe herself or button a button. She noted that Ms. Forbes was able to make a fist with her right hand, which requires a certain range of motion. Ms. Witherspoon concluded that Ms. Forbes should be able to work a full eight-hour day in a sedentary capacity, which is the lowest level of work.
 

 Ms. Witherspoon reviewed a report by Dr. Eric George who stated that Ms. Forbes could perform light to medium duty work. Ms. Witherspoon admitted that based on Dr. George’s report, Ms. Forbes could not perform her prior job.
 

 Regina Patterson testified that she is employed by the Office of Risk Management, had reviewed Ms. Forbes’ file, and that Ms. Forbes’ benefits were discontinued based on the reports by Dr. Robert. Ms. Patterson acknowledged that Dr. George examined Ms. Forbes at their request and concluded that Ms. Forbes | (¡could only perform light to medium duty work. Ms. Patterson did not think that Dr. George’s report warranted reinstatement of Ms. Forbes’ benefits.
 

 Ms. Forbes submitted the deposition of Dr. Kenneth Adatto, an orthopedic surgeon, into evidence. Dr. Adatto first examined Ms. Forbes on August 21, 2007. She complained of pain, locking, swelling, aching, and limited range of motion in her right hand and wrist. She stated that her thumb does not move well. Dr. Adatto testified that he told Ms. Forbes that she had to protect her right hand and wrist from heavy lifting and repetitive motion. This injury would make it difficult for her to turn and lift patients. He examined Ms. Forbes again on May 26, 2008 where there was no change in her symptoms or examination. He testified that Ms. Forbes was permanently disabled. In his opinion, she did not have the ability to fully extend her thumb. Nerve testing done on June 5, 2008 indicated there was residual carpal tunnel compression. Dr. Adatto gave Ms. Forbes the names of hand specialists but he was not sure if additional surgery would be beneficial. There was no change in Ms. Forbes’ condition when he examined her on August 19, 2008. He referred her to the LSU or Tulane hand clinic because her
 
 *381
 
 insurance had run out. Dr. Adatto opined that Ms. Forbes was restricted to light duty work and she should not go into heavy manual labor. Dr. Adatto reviewed Dr. George’s report. While he agreed with Dr. George that Ms. Forbes has a disability, he disagreed that there was symptom magnification. Dr. Adatto never suspected that Ms. Forbes was exaggerating her symptoms.
 

 Dr. Eric George’s report dated July 28, 2008 was admitted into evidence by both parties. Dr. George examined Ms. Forbes' at the request of the defendant. Dr. George reviewed Ms. Forbes’ medical history and records. He noted her self-limiting behavior on the FCE and found “marked symptom magnification” in his ^examination. He concluded that she could most likely work in the light to medium strength category but suggested she be fully released in the light strength category.
 

 An initial vocational evaluation was also admitted into evidence by both parties. This report indicates that a meeting was held at Ms. Forbes’ residence on July 5, 2007. The report stated that in her job as a resident training specialist, Ms. Forbes fed, bathed and transported totally disabled patients. She had previously worked as a charge account clerk and a security guard. The report stated that she was released to return to work at the sedentary level or possibly higher. Based on her work skills and background, she could consider working as an unarmed security guard, dispatcher, hostess, or scheduler. The future plan of action of the report states that a second meeting was to be scheduled, job skills training was to be administered, job openings were to be communicated to Ms. Forbes, and job descriptions were to be submitted to Ms.' Forbes’ doctor. No further records are contained in the record or exhibits to indicate whether or not this plan of action was completed.
 

 Four reports from Dr. Robert were admitted into evidence by the defendant. Dr. Robert’s first report dated December 20, 2005 states that an examination on that date reveals Ms. Forbes to be very comfortable, she has full range of motion in her digits, and is using her wrist. Ms. Forbes reached maximum medical improvement and “can return to her regular duties at work.”
 

 Dr. Robert’s second report dated May 1, 2006 states that Ms. Forbes reports that her right hand “gives out on her” and has decreased strength. Dr. Robert noted that Ms. Forbes held her hand in an awkward position but when she relaxed the hand she was able to move her digits and cross her index and middle fingers “fairly normally.” He recommended an FCE to determine any permanent impairment.
 

 | sDr. Robert’s third report dated May 30, 2006 states that the level of performance on the FCE was influenced by Ms. Forbes’ self-limiting behavior, noting that she had multiple complaints some of which were not related to her wrist. Dr. Robert states that her maximum capacity was unable to be determined during the FCE and because of her self-limiting behavior he is unable to determine the restrictions for her work.
 

 Dr. Robert’s fourth and final report dated September 21, 2006 states that Ms. Forbes complained of pain in her arm, numbness in her small finger and difficulty using her hand. She also complained that she had difficulty clapping or patting someone on the back. The examination states that the range of motion does not appear to be changed and there is no discrete tenderness, nor is there any atrophy. There were no restrictions in her digital motion. Dr. Robert noted that she held her thumb in a “somewhat radial
 
 *382
 
 abduction position but seems to be able to correct this when she is distracted.” X-rays showed no change from prior x-rays. The report concludes that Ms. Forbes has reached maximum medical improvement. Although she insisted that she was not able to do very much with her hand, her physical examination did not correlate with this because she has “symmetrical wear from using her hand as she does on the opposite side.” The report further states that her complaints of not being able to pat someone on the back are not consistent “with her findings.” She was informed that nothing else could be done for her wrist and a psychological evaluation was suggested to explore underlying factors that may be impeding her return to work.
 

 At the conclusion of trial, the matter was taken under advisement. Judgment was later rendered in favor of defendant, dismissing plaintiffs claim. This timely appeal followed.
 

 I
 
 .¡ASSIGNMENT OF ERROR
 

 On appeal, plaintiff, in her only assignment of error, argues that despite the trial court’s finding that plaintiff was not credible, in view of the fact that there was consistent medical evidence that the plaintiff could not perform one component of her job, namely, lifting 300 pound patients who could not assist, it was error for the trial court to uphold the termination of benefits, or alternatively, not to have benefits resumed upon the receipt of either Dr. Adatto’s report or Dr. George’s report. The plaintiff reasons that because her payments were stopped on the basis of medical records, and not her statements, there is no credibility choice to be made. Rather because all the experts agree that plaintiff cannot lift patients who cannot assist by using their legs, it was error for the trial court to uphold termination of benefits. Plaintiff contends that this error of law requires a
 
 de novo
 
 review.
 

 Defendant responds that a review of the testamentary and documentary evidence support the trial court’s findings and the judgment is neither manifestly erroneous nor clearly wrong.
 

 LAW AND DISCUSSION
 

 Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, (La.7/1/97), 696 So.2d 551, 556. Under this standard, in order for an appellate court to reverse a trial court’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong.
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of a review of the entire record, an appellate court may not 11 preverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court.
 
 Id.
 
 Thus, when there is a conflict in the testimony, reasonable evaluations
 
 of
 
 credibility and reasonable inferences of fact may not be disturbed by the appellate court although the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Id.
 
 The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong.
 
 Bruno v. Harbert International, Inc.,
 
 593 So.2d 357, 361 (La.1992).
 

 
 *383
 
 Further, the responsibility of determining which expert is most credible is reserved to the trier of fact.
 
 Mistich v. Volkswagen of Germany, Inc.,
 
 95-0939 (La.1/29/96), 666 So.2d 1073, 1077. If a trial court gives greater weight to one expert’s testimony, this finding cannot be reversed absent manifest error.
 
 Gautreau v. Gautreau,
 
 96-1548 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339,
 
 writ denied,
 
 97-1939 (La.11/7/97), 703 So.2d 1272. The manifest error/clearly wrong standard of appellate review applies in workers’ compensation cases even when the trial court’s decision is based solely upon written reports, records or depositions.
 
 Bruno,
 
 593 So.2d at 361.
 

 In rendering judgment in favor of the defendant, the trial court wrote:
 

 The Court listened attentively to the testimony of the witnesses and observed their demeanor. It has carefully reviewed the entire record in this matter: the various pleadings, the testimony of the witnesses, both live and by deposition, the trial exhibits and the stipulations of the parties and the arguments of counsel.
 

 |nFrom all of the above the Court has concluded that Claimant was not a credible witness, that her physical complaints fly in the face of the medical evidence and are grossly exaggerated and that her disputed workers’ compensation claim has no merit and should be dismissed, ...
 

 A review of the record indicates there is a reasonable factual basis in the record for these findings. The record reflects that Ms. Forbes showed the trial judge how she was able to move her hand, fingers, and thumb. She testified that has had pain in her wrist, up and down her arm to her shoulder and that she could not bathe herself, feed herself, or button buttons. Both Ms. Witherspoon and Dr. Robert disputed these complaints. Ms. Witherspoon’s testimony and report document the inconsistent behavior exhibited by Ms. Forbes during the FCE. Ms. Forbes was able to do more lifting at the end of the exam than at the beginning which is opposite of the expected outcome, and she had more trouble climbing stairs, which does not require as much arm use as climbing a ladder, which she had little difficulty doing. There was no reference to the “jerky” arm movements described by Ms. Forbes to the Court and to Dr. Robert. Dr. Robert’s report of December 20, 2005 states that Ms. Forbes had full range of motion in her digits and was able to use her wrist. On that date he found she could return to her regular duties at work. When Ms. Forbes returned to Dr. Robert in May 2006, after her benefits had been terminated, with complaints of problems with her hand, he ordered the FCE. His frustration at Ms. Robert’s self-limiting behavior on the FCE is evident in his report dated May 30, 2006 wherein he notes that Ms. Forbes’ grip strength did not change despite different grip levels on the dynamometer. On his report dated September 21, 2006, Dr. Robert states that Ms. Forbes’ physical complaints do not correlate with the findings on his examination, specifically stating that she has “symmetrical wear from using her hand as she does on the opposite side.”
 

 112The trial judge was able to observe the plaintiffs testimony and her movements. In assessing plaintiffs credibility, the trial court, no doubt, noted internal inconsistencies within the plaintiffs testimony and inconsistencies between the plaintiffs testimony and that of Ms. With-erspoon and Dr. Robert’s reports. We cannot say the trial judge, which had the opportunity to observe and hear the plaintiffs testimony, as well as observe the movements of her hand and arm, was
 
 *384
 
 clearly wrong in discrediting the testimony of the plaintiff.
 

 For the above stated reasons, we find no merit to plaintiffs argument that credibility is not at issue because the medical evidence is in agreement that plaintiff cannot lift patients.
 

 Furthermore, a review of the evidence, ignoring the issue of credibility, indicates that plaintiff did not carry her burden of proof. Plaintiffs Disputed Claim for Compensation seeks supplemental earnings benefits (SEB). An injured worker is entitled to SEB when the employee’s injury results in her inability to earn wages equal to ninety percent or more of the wages she was earning at the time of the injury. LSA-R.S. 23:1221(3). The injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount in any employment.
 
 Cooper v. St. Tammany Parish School Bd.,
 
 2002-2433 (La.App. 1 Cir. 11/7/03) 862 So.2d 1001, 1006. An injured worker’s testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to SEB.
 
 Id.
 

 While Dr. Adatto and Dr. George found plaintiff could not return to her prior employment, there was no evidence in the record that plaintiff could not earn at least ninety per cent of her pre-injury wages. Dr. Robert initially determined that plaintiff could return to her prior job without limitations. In his later report, however, he states that he cannot determine any restrictions for work due to | ^plaintiffs self-limiting behavior. Additionally, even with the self-limiting behavior noted on the FCE, Ms. Witherspoon concluded that plaintiff could work in the lowest level of exertion, that in a sedentary position. There was no testimony, however, that plaintiff had even attempted to return to work. In fact, plaintiffs testimony was unequivocal that she had not attempted to work in any capacity following her March 2005 surgery. Thus, plaintiff failed to show she was entitled to SEB because she failed to carry her burden of proving that she was unable to earn ninety per cent of her pre-injury wages.
 

 CONCLUSION
 

 For the foregoing reasons, we find no error in the trial court’s dismissal of plaintiffs disputed workers’ compensation claim.
 

 AFFIRMED.