WINDHORST, J.
Appellants/defendants, Terminix Service Co., Inc. and LUBA, appeal the judgment of the Workers' Compensation Judge ("WCJ") in favor of appellee/claimant, Rodney Loar. For the foregoing reasons, we affirm in part and reverse in part the judgment of the WCJ.
Facts
In December 2011, claimant was employed by Terminix as a technician. On December 10, 2011, claimant was spraying the outside of a customer's home when he slipped in a muddy ditch and injured his right knee and hit his head. The parties stipulated that claimant sustained a work-related injury on December 10, 2011 while in the course and scope of his employment with Terminix. The parties agree that claimant suffered a work-related injury to his right knee and head. Thus medical expenses for treatment associated with these injuries are not at issue in this appeal.
Dr. Gordon Nutik initially treated claimant for his right knee injury. Dr. Nutik tried several techniques to relieve the constant pain to claimant's right knee, including performing arthroscopies, Synvisc injections and prescribing use of orthopedic devices. During the time Dr. Nutik treated claimant for his right knee injury, claimant began suffering from a mild limp favoring the right extremity and causing right hip pain. Because claimant continued to have right knee pain, in 2014 Dr. Nutik recommended a total knee replacement of claimant's right knee and referred claimant to Dr. Chad Millet. Dr. Millet performed knee replacement surgery on claimant's right knee on December 3, 2014.
After the right knee replacement surgery, claimant attended extensive physical therapy. Over the course of the next few years, he continued to have trouble with his right knee, and, at various times, instability in that knee caused him to fall. On August 9, 2016, claimant learned that the implant used in his right knee replacement (the Zimmer Persona hardware) had been recalled on March 12, 2015. On August 1, 2017, Dr. Jeffrey Sketchler performed a *1271 revision surgery to his right knee and removed the Zimmer Persona hardware. Claimant endured a total of four surgeries to his right knee as a result of the initial, work-related injury.
Because of the right knee injury, claimant asserts that, over the course of the next several years, he sustained multiple falls and several incidents of right knee instability, patellofemoral popping, buckling, altered gait and significant difficulty with daily living. These conditions allegedly caused him to also suffer injuries to his right hip, lower back, left shoulder and left knee. Claimant's medical records from September 18, 2014 through August 9, 2016 from doctors and physical therapists were introduced into evidence. These records indicate claimant repeatedly and consistently complained of pain in these areas and other areas. The records, however, do not provide extensive information and/or opinions on the cause of this pain.
Hip, Back and Right Groin Pain
Claimant's medical records indicate in approximately June 2012, which is after his right knee injury, he began suffering from right hip, groin and lower back pain. His records indicate that claimant had a prolonged antalgic limp with a gait and that he had limitations walking and with stairs. Claimant's pain in these areas increased over time. Dr. Millet noted, on September 18, 2014, that claimant has "referred hip pain," and on November 6, 2014, that the hip pain could be from limping on a bad knee. Dr. Millet ordered a right hip MRI which was denied by the employer as non-compensable. As suggested by Dr. Millet, claimant used his personal health insurance to have the MRI performed. This MRI revealed a bone lesion of the right femur, possible cyst, and osteoarthritic changes of right and left hips. Claimant's pain in these areas was treated primarily with pain medication and physical therapy.
Left Shoulder Injury
Claimant asserts that he injured his left shoulder in May 2015 at physical therapy for his right knee. Claimant's May 2015 physical therapy records indicate the following. On May 4, 2015, claimant's right knee buckled during ambulation on the treadmill. On May 11, 15, and 18, 2015, claimant had "decreased dynamic balance and impaired gait mechanics." On May 18, 2018, claimant's physical therapist noted that claimant "continues to experience buckling [with] occasional episodes of falls." On May 20, 2015, claimant was attempting to sit on a bench when his right knee buckled and he reported a "near fall." Claimant was able to sit on a bench, but reported a sharp pain which quickly subsided.
In August, 2015, claimant went to Dr. Sketchler at Pontchartrain Orthopedics & Sports Medicine for his left shoulder injury. On an August 27, 2015 new problem questionnaire, claimant wrote that he had pain in his lower back and left shoulder due to a fall on his left side when his right knee collapsed. An August 31, 2015 chart note by Dr. Sketchler indicates claimant reported to him that "[h]is left shoulder, left elbow and left wrist have been uncomfortable since a recent fall. He states his right leg gave way and he fell on his left side." Dr. Sketchler performed surgery on claimant's left shoulder on December 11, 2015.
Left Knee Injury
Claimant asserts his left knee injury is related to his initial, work-related, right knee injury, because on June 4, 2016, as claimant was getting out of the shower, his right knee gave way, and he fell between the tub and toilet with his left knee still in the tub. Appellee went to Dr. Sketchler on June 13, 2016 for this injury. Chart notes from this visit state that "[a]bout two weeks ago, his left knee 'buckled'. [sic ] It *1272 tends to give away, he states, since his knee replacement in 12/2014 ... since the fall and twist of the left knee, two weeks ago, he is having severe pain with weight bearing in the knee anteriorly and anterior medially." After this fall, an MRI of the left knee showed a medial meniscus tear with some chondromalacia. Dr. Sketchler performed surgery on claimant's left knee on July 22, 2016.
Procedural History
On November 6, 2015, claimant filed a disputed compensation claim with the Officer of Workers' Compensation, disputing the non-authorization of medical treatment recommended by his orthopedist for his back and hip. On December 7, 2015, Terminix and LUBA filed their answer to claimant's compensation claim, in which it denied that claimant's alleged injuries, disabilities and medical conditions are related to and/or caused by his work accident. On March 10, 2017, claimant filed an amended disputed compensation claim, further disputing the non-authorization of medical treatment to his left shoulder and left knee. Claimant also asserted in the amended claim that his total knee replacement had failed because the Zimmer Persona medical equipment was recalled three months after his surgery. On April 13, 2015, Terminix and LUBA filed their answer to claimant's amended compensation claim, denying the allegations therein.
Trial was held on July 20, 2017, following which, on September 12, 2017, the WCJ issued a judgment, finding that: (1) claimant's injuries to his head and right knee are compensable workplace injuries; (2) claimant's testimony was credible; (3) claimant's post-accident injuries to his left knee, left shoulder, right hip and low back were a foreseeable consequence to the instability in claimant's right knee, which was caused by the Zimmer Persona device failure, and are compensable; and (4) Terminix's denial of treatment to claimant's left shoulder, left knee, right hip and low back, and refusal to pay for treatment and to reimburse claimant for out-of-pocket expenses related thereto was arbitrary, capricious and unreasonable. The WCJ ordered Terminix to pay $5,000 in penalties; $9,500 in attorney's fees and legal interest; and for any out-of-pocket expenses and costs for medical treatment not authorized to the left knee, left shoulder, low back and right groin. This appeal followed.
Assignments of Error
Appellants assert that the WCJ erred as follows: (1) ruling on issues not properly before the court; (2) finding claimant established subsequent accidents; (3) finding claimant's subsequent conditions are causally related to claimant's work accident; (4) awarding claimant all out-of-pocket expenses and costs of medical treatment; and (5) awarding claimant penalties, attorney's fees, and judicial interest. In his Answer to the Appeal, claimant asserts that this is a frivolous appeal and seeks an award of damages and attorney's fees.
Assignment of Error One
Appellants assert that the WCJ erred in addressing issues not properly before the court, including claimant's right hip and lower back injuries and the alleged defectiveness of the knee replacement device used in claimant's surgery. Appellants argue that these issues were not properly before the WCJ because they were not listed in claimant's pre-trial statement.
La. R.S. 23:1317 (A) states as follows:
The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined *1273 to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.
This statute "reflects the legislature's intent, in compensation cases, to materially relax evidentiary and procedural rules and subordinate procedural considerations to the discovery of the truth and the protection of substantive rights." Meche v. Foremost Management Corp., 93-1390 (La. App. 3 Cir. 5/4/94), 640 So.2d 585, 587. "A trial judge has great discretion in deciding whether to receive or refuse offered testimony of witnesses." Id., citing Bennett v. SEDCO Maritime, 520 So.2d 894 (La. App. 3d Cir. 1987).
The disputed claim for compensation lists medical treatment for back and hip under the bona-fide dispute section of the form. In addition, there are references throughout the medical records and in the pleadings referring to claimant's issues with his right hip and back. Claimant also testified at trial that he was walking with a limp and suffered from lower back pain, which then moved into the right hip. He testified that appellants did not pay medical expenses associated with his pain. Appellants did not object on this issue during the workers' compensation proceedings. These issues were also addressed in the post-trial briefs. Considering these facts, the discretion the WCJ has in compensation cases and in deciding whether to consider evidence, as well as the lack of an objection relative thereto by appellants, we find no abuse of discretion by the WCJ in addressing the right hip and back claims.
We also find no error as to the WCJ's consideration of the alleged defectiveness of the knee replacement device used in claimant's surgery. The WCJ did not attribute any liability against appellants for the use of the alleged defective device nor did it award claimant any damages associated with the device. The WCJ merely considered the alleged defectiveness of the device as it relates to a possible cause of claimant's injuries.
In light of the foregoing, this assignment of error lacks merit.
Assignment of Error Two
Appellants assert that the WCJ erred in finding claimant established subsequent accidents causing injury to his left shoulder and left knee. Louisiana jurisprudence indicates that the appellate court's review of a workers' compensation case is governed by the manifest error or clearly wrong standard. Lopez v. Marques Food Distribs., 11-424 (La. App. 5 Cir. 12/28/11), 80 So.3d 1248 (citation omitted). Under this standard, an appellate court is precluded from setting aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Id. In applying the manifest error standard, the appellate court need not determine whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id. If the trial court findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though it may be convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id., citing Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990) ; Prevost v. Interior Gardens, Inc., 04-0274 (La. App. 4 Cir. 10/6/04), 887 So.2d 522.
The WCJ's "determinations as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a *1274 showing of manifest error." Smith v. Roy O. Martin Lumber Co., 03-1441 (La. App. 3 Cir. 04/14/04), 871 So.2d 661. In a workers' compensation case, an employee's workplace accident is presumed to have caused or aggravated his disability when he proves that: the disabling symptoms appeared after the accident and there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the disabling condition. LaSalle v. City of Lake Charles, 17-32 (La. App. 2 Cir. 05/24/17), 222 So.3d 148. If the evidence leaves the probabilities of causation equally balanced, the claimant has failed to carry his burden of proof. Id.
Under Louisiana jurisprudence, the general rule is that the "natural consequences that flow from the primary injury are compensable absent an independent intervening cause." Buxton v. Iowa Police Dep't., 09-520 (La. 10/20/2009), 23 So.3d 275 (citations omitted). Recovery is generally available for all natural consequences that flow from the primary injury absent an independent intervening cause. Namias v. Sunbelt Innovative Plastics, LLC, 15-1380 (La. App. 1 Cir. 2/24/16), 190 So.3d 745. The key inquiry is the relationship between the second injury and the initial, work-related injury. Id.
Appellee asserts that after the knee replacement surgery to his right knee, his right knee began buckling causing him to fall and that, in May 2015, a fall at physical therapy caused him to injure his left shoulder. Appellee's physical therapy progress notes in May 2015 indicate the following: (1) on May 4, 2015, appellee reported that his right knee buckled during ambulation on the treadmill; (2) on May 18, 2015, appellee reported his knee is slowly improving but he continues to experience his knee buckling and occasional episodes of falls; and (3) on May 20, 2015, appellee reported his knee buckled when he attempted to sit on a bench and had a near fall. On an August 27, 2015 new problem questionnaire at Pontchartrain Orthopedics & Sports Medicine, appellee wrote that he had pain in his lower back and left shoulder due to a fall on his left side when his right knee collapsed. An August 31, 2015 chart note indicates appellee told his doctors that "his left shoulder, left elbow and left wrist have been uncomfortable since a recent fall. He states his right leg gave way and he fell on his left side. He is a left hand dominant individual." Dr. Sketchler's notes from October 31, 2015, after an office visit, again reflect that appellee has had left shoulder and back pain since a fall where his right leg gave way and he fell on his left side. At trial, appellee testified that in 2015, his knee began buckling and that his stability was waning. He stated that while he was doing leg exercises, his right knee buckled and he fell. He further stated that, he extended his left arm to break his fall on a bench that was nearby. He testified that the fall hurt, he was embarrassed, and he recovered himself but that he did not realize the severity at the time of the fall.
While claimant's medical records support that his right knee continued to cause him pain, the record is lacking in circumstances that would corroborate claimant actually fell at physical therapy and injured his left shoulder. Claimant asserts he fell and injured his left shoulder in May 2015, but, based on the records, he did not seek medical attention for the injury until the end of August 2015. There is an insufficiency of evidence corroborating that he injured himself in May 2015 as the records do not state he injured his left shoulder, and he did not go to the doctor for this injury until three months later. Thus, based on the evidence, the probabilities of causation are not certain and, we cannot say the claimant carried his burden of proof for proving that he suffered a subsequent *1275 accident injuring his left shoulder due to his work-related injury. Consequently, we find that the WCJ's finding that claimant suffered a subsequent accident that caused him to injure his left shoulder is manifestly erroneous.
As to his left knee injury, appellee asserts that, on June 4, 2016, as he was getting out of the shower, his surgically repaired right knee buckled and caused him to fall and injure his left knee. Dr. Sketchler's chart notes on June 13, 2016 about appellee state that "[a]bout two weeks ago, his left knee 'buckled'. [sic] It tends to give away, he states, since his knee replacement in 12/2014 ... since the fall and twist of the left knee, two weeks ago, he is having severe pain with weight bearing in the knee anteriorly and anterior medially." Appellee asserts that Dr. Sketchler's reference to his left knee buckling is an error. Given that Dr. Sketchler refers to the knee that was replaced in 12/2014, which was the right knee, appellee's assertion appears to be correct.
Dr. Sketchler's July 22, 2016 operative report for the left knee states that claimant's "orthopedic history is significant for a contralateral right total knee replacement by another surgeon and he has had symptoms of subjective instability for which he has already seen his surgeon and may be a candidate for revision surgery." An October 3, 2016 physical therapy note from therapy for the left knee states that "[t]he patient's ability to perform functional standing balance and strengthening exercises is limited due to his R knee buckling intermittently throughout the session. The patient was only able to complete 10 of the monster walks prior to R knee buckling leading to near fall." Given the above medical evidence regarding claimant's left knee injury and other evidence presented at trial, we find no error in the WCJ's finding that claimant established that he had a subsequent accident and injured his left knee.
*1276 Assignment of Error Three
Appellants assert that the Workers' Compensation Judge erred in finding that claimant's subsequent conditions are causally connected to his work accident. The record, including but not limited to the chart notes referenced above, shows that claimant consistently had problems with his initial injury to his right knee even after his knee replacement surgery. Claimant's medical and physical therapy records indicate that after the initial injury, he began walking with a limp. Physical therapy records repeatedly state that he had "decreased dynamic balance and impaired gait mechanics." Dr. Millet opined after a November 6, 2014 exam that the pain in claimant's hips "could be from limping on [a] bad knee." At this visit, claimant still had pain in his right knee and complained of pain in both hips that had been present for a year or more. Dr. Millet's records also note that claimant had continued pain in the right knee, weakness in his quadriceps, chronic instability in his right knee, and buckling of the right knee. Indeed, on August 24, 2016, claimant underwent reverse/replace knee joint surgery on his right knee.
Thus, having considered the record in its entirety, we find no error in the WCJ's conclusion that claimant's subsequent injuries to his right hip, groin, lower back and left knee were caused by his initial, work-related injury and thus are compensable. Because, for the reasons stated above, we concluded that the claimant did not meet his burden of proof with regard to the left shoulder injury, we also find that the WCJ was manifestly erroneous in finding that the left shoulder injury is a compensable injury.
Assignment of Error Four
Appellants assert that the Workers' Compensation Judge erred in awarding claimant all out-of-pocket expenses and costs of medical treatment to the left knee, left shoulder, low back and right groin because approval for the treatment was not requested prior thereto, as required by La. R.S. 23:1142.
La. R.S. 23:1142(B) provides that a health care provider may not incur more than $750.00 in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. La. R.S. 23:1142(E) sets forth an exception, which provides that if "the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury." Louisiana jurisprudence provides that under La. R.S. 23:1142(E), when an employer or insurer has denied that a claimant's injury is compensable, the statutory cap does not apply. Perrilloux v. Uniforms by Kajan, Inc., 13-377 (La. App. 5 Cir. 12/27/13), 131 So.3d 1026 ; Washington v. Lyon's Specialty Co., 96-263 (La. App. 1 Cir. 11/08/96), 683 So.2d 367.
Louisiana courts have held that an employer who disputes the compensability of its employee's injury should not be allowed to complain that it was not given the opportunity to authorize previously incurred medical expenses. Carradine v. Regis Corp., 10-529 (La. App. 3 Cir. 11/03/10), 52 So.3d 181, 192. See also, Martin v. Elmwood Medical Center, 95-415 (La. App. 5 Cir. 11/15/95), 665 So.2d 470. In reaching this conclusion, the courts have reasoned that "It does not further the purpose of La. R.S. 23:1142 to punish employees for failing to request authorization from employers who do not accept their liability for benefits under the law of workers' compensation." Id. In addition, the application of the exception in La. R.S. 23:1142(E) to unauthorized medical expenses incurred before the employee seeks workers' compensation benefits ensures that claimants in this situation are not unnecessarily deprived of reimbursements for medical services which the employer is typically required to furnish.
The record indicates that, in January 2015, Dr. Millet requested approval for an MRI due to pain in right groin and hip but workers' compensation denied the request. Claimant's physical therapy records dated January 2015 reflect that insurance limitations were placed on claimant's treatment and that, in April 2015, claimant was denied further treatment. In appellants' answers to claimant's disputed claim for compensation and amended disputed claim for compensation, appellants denied that claimant's alleged injuries to his right hip, low back, left shoulder and left knee are related and/or caused by his alleged work accident.
Because Terminix denied and continues to deny that claimant's subsequent injuries are compensable injuries, the exception in La. R.S. 23:1142(E) applies, and none of claimant's medical expenses can be capped based on a failure to obtain prior consent from Terminix or its workers' compensation insurer. Accordingly, we find no error in the WCJ's award of out-of-pocket medical expenses to claimant. This assignment of error lacks merit.
Because we find that the left shoulder injury is not compensable, appellants are not obligated to pay out-of-pocket expenses associated with this injury. Thus, we reverse the judgment to the extent expenses associated with the left shoulder are awarded.
Assignment of Error Five
Appellants last assert that the WCJ's award of penalties and attorney's fees is manifestly erroneous because the claims were reasonably controverted. We *1277 find that the WCJ erred in awarding penalties and attorney's fees.
Under Section 23:1201(F), both penalties and attorney's fees may be awarded for the failure to provide timely payment of benefits or medical expenses, unless, as provided in Section 23:1201(F)(2), the claim is "reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment that can result in the imposition of penalties and attorney's fees. Stelly v. Health S. Rehab., 2003-171 (La. App. 3 Cir. 07/02/03), 854 So.2d 960, citing Authement v. Shappert Eng'g, 02-1631 (La. 2/25/03), 840 So.2d 1181. To reasonably controvert a claim, the defendant must have a valid reason or evidence upon which to base his denial of benefits. Stelly, Id. at 967, citing Brown v. Texas-LA Cartage, 98-1063 (La. 12/1/98), 721 So.2d 885.
An award of attorney's fees in a workers' compensation case is penal in nature, as it is intended to discourage indifference by employers and insurers. Adams v. Bayou Steel Corp., 01-1392 (La. App. 5 Cir. 04/10/02), 813 So.2d 1285. Attorney's fees should not be imposed in doubtful cases, or where a bona fide dispute exists as to the employee's entitlement to benefits. Id. The mere fact that an employer loses a disputed claim is not determinative. Id. The test to determine whether the employee's right to benefits was reasonably controverted is, given the facts, medical and otherwise, known to the employer or his insurer, whether the employer or insurer had a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Id.
After considering the record in its entirety, we find that the WCJ was manifestly erroneous in awarding penalties and attorney's fees to claimant. While we find that most of claimant's subsequent injuries are related and/or caused by the initial, work-related injury, the evidence, medical and otherwise, shows that appellants reasonably controverted these claims. In addition, the record reflects that appellants may not have been aware of some of the medical treatment claimant sought for these injuries and/or medical records indicating the relationship between his work injury and the other injuries. Accordingly, we reverse the WCJ's finding that Terminix's denials of treatment to claimant were arbitrary, capricious and unreasonable, and vacate the WCJ's award of penalties and attorney's fees to claimant.
In light of the foregoing, we also decline to award appellee any damages based on his assertion that this is a frivolous appeal.
Conclusion
For the reasons stated above, we affirm the WCJ's judgment finding that claimant's post-accident injuries to his left knee, right hip and low back were a foreseeable consequence to the instability in claimant's right knee and are compensable; as well as the WCJ's award of out-of-pocket expenses related to these injuries. We reverse the WCJ's finding that claimant's left shoulder injury is compensable, and the judgment to the extent medical expenses associated therewith are awarded. We also reverse the WCJ's finding that Terminix's denial of treatment to claimant's left shoulder, left knee, right hip and low back, failure to pay for treatment and failure to reimburse claimant for out-of-pocket expenses related thereto was arbitrary, capricious and unreasonable, and we vacate the WCJ's award of attorney's fees and penalties.
AFFIRMED IN PART, AND REVERSED IN PART