ZACHARY FLORES

VERSUS

JEFFERSON FEED AND GARDEN SUPPLY

NO. 22-CA-235

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
STATE OF LOUISIANA
NO. 20-890
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

March 29, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**AFFIRMED**
   **SJW**
   **MEJ**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ZACHARY FLORES
    Donald F. deBoisblanc, Sr.
    Donald F. deBoisblanc, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON FEED AND GARDEN SUPPLY AND HANOVER AMERICAN
INS. CO.
    Doris T. Bobadilla
    Kelsey L. Bonnaffons

**WINDHORST, J.**

Appellant/claimant, Zachary Flores, appeals the workers' compensation court's judgment finding that he is not entitled to workers' compensation benefits because he failed to prove that he sustained an accident, injury, or disability in the course of his employment at Jefferson Feed and Garden Supply. We affirm the workers' compensation judgment for the following reasons.

**FACTS and PROCEDURAL HISTORY**

In brief, Zachary's claim involves an injury that allegedly occurred while Zachary was working at Jefferson Feed as a store manager in 2019. On September 25, 2019, he spent approximately eight hours of his workday unloading and stocking the shelves with bags of product, each bag weighing approximately 30 to 40 pounds. He went home that evening exhausted and went to sleep. The next morning, Zachary claims he awoke in "extreme pain." He went to work, however, at Jefferson Feed that day, but placed himself on light duty. Despite his back pain, Zachary continued to work at Jefferson Feed on light duty until October 31, 2019. Zachary had back surgery, a discectomy, on November 4, 2019. After surgery, he never returned to work at Jefferson Feed.

Four months after his injury, on January 28, 2020, Zachary filed a disputed claim for compensation with the Office of Workers' Compensation, asserting an injury to his lower back on September 25, 2019 while working at Jefferson Feed. In the disputed claim form, Zachary asserted that he injured his back lifting and carrying large bags of product to restock the store, and that the injury worsened daily until his eventual collapse. He claimed that he reported the injury the next day on September 26, 2019 to Lynn Morvant, the general manager. Zachary also indicated in the disputed claim form that Jefferson Feed terminated his wage benefits on December 6, 2019, and that he had not received any medical benefits. Jefferson

Feed answered the claim, denying that Zachary sustained an injury during his employment with Jefferson Feed.

This case proceeded to trial on June 9, 2021 and August 23, 2021. Zachary, Mr. Morvant, and Dawn Paradis, a vocational rehabilitation counselor, testified at the trial and the parties introduced into evidence the depositions of their medical experts, including Dr. Marcus Ware, Zachary's treating neurosurgeon, and Dr. Andrew Todd, defendant's medical expert. The following facts were developed.

Zachary first started working for Jefferson Feed in about September 2012 as a stocker, and eventually progressed to assistant manager and then store manager. On Wednesdays, Jefferson Feed typically received a delivery of dog and cat food, including five or six pallets of product with 30 to 40 bags per pallet. Each bag weighed approximately 30 to 40 pounds. On these days, Zachary and another store employee would unload the bags from the truck, move the bags into the store, and shelve them. The process took roughly eight hours, so almost his entire shift on those days involved lifting the bags, moving them, and shelving them. On September 25, 2019, Zachary spent most of his day unloading and shelving dog and cat food. He claims that while he did not feel any obvious pop or injury that day, this process caused his injury and caused him to wake up in extreme pain on September 26, 2019.

Zachary first sought medical treatment for his back pain on October 3, 2019 at Ochsner Medical Center. At this visit, he did not inform Ochsner medical providers that he injured himself while working at Jefferson Feed. The medical records show that Zachary informed the medical providers that his lower back pain had progressively worsened over the past week, and that he denied any trauma or obvious inciting event. At the October 3, 2019 visit, doctors gave him pain medicine and encouraged scheduled anti-inflammatory therapy for continued pain management.

On October 9, 2019, he sought medical treatment at Chabert Medical Center because of the sharping pain and lack of relief. The medical records from this visit indicate that Zachary mentioned to the medical providers that his job involved lifting heavy bags and that this was a possible cause of his back pain. He had an MRI done at Chabert, which revealed a disc herniation at L3-4 with severe compression. Because of the severity of his condition, the medical providers referred Zachary to Dr. Marcus Ware for a neuro-surgery follow up.

Dr. Ware first examined Zachary on October 16, 2019, and based on his MRI, immediately recommended surgery because of the risk to his neurological status and the size of the disc herniation. Dr. Ware indicated that Zachary could continue to work light duty until his surgery. Zachary testified that he did not tell Dr. Ware that his injury occurred at work, and medical records show no indication to the contrary.

On October 31, 2019, Zachary collapsed, and an ambulance transported him to Ochsner on Jefferson Highway. On November 4, 2019, Dr. Ware performed a discectomy on the herniated portion of the disc. Zachary was in the hospital from October 31, 2019 until November 5, 2019. After the surgery, Zachary's condition improved but he was unable to return to any work requiring heavy lifting. Zachary last saw Dr. Ware in February 2020.

Zachary testified and his medical records confirmed that he had a history of epilepsy. Although he testified that his last epileptic event was September 15, 2014, medical records from October 31, 2019 state that his last seizure was "2 months ago." Medical records also showed that Zachary struggled with obesity, bipolar disorder, and previous back pain. The records showed that he had suffered with back pain as recently as January 2018.

At trial, Zachary testified that when he injured his back on September 25, 2019, he did not feel a significant pop, but after lifting all day he went home, went directly to sleep, and woke up the next morning in excruciating pain. He asserted

that the next day at work on September 26, 2019, he informed the staff at the store and Mr. Morvant, his supervisor, by telephone that he was unable to lift anything because he was in so much pain. Zachary testified that he told Mr. Morvant multiple times that he was in pain, when he went to the doctor and would miss his shift, and when he was having surgery. After surgery, he did not return to Jefferson Feed but remained on the payroll through December 6, 2019.

Zachary testified that he learned he was no longer working at Jefferson Feed when he went to buy cat food, and he did not receive his employee discount. He stated that he inquired why he did not receive his employee discount, and Mr. Morvant informed him that he no longer worked there. He testified that on November 11, 2019, he applied to go to college at University of New Orleans on a full-time basis.

During questioning, Zachary confirmed that prior to his injury, he had, as store manager, created Jefferson Feed's workers' compensation incident report form because Jefferson Feed did not have one. He testified that the purpose of the form was for employees to report accidents on the job, and that he had created the form after another employee was injured on the job. He confirmed that he never used this form to report his injury that allegedly occurred at work on September 25, 2019.

Mr. Morvant testified on behalf of Jefferson Feed and as Zachary's supervisor. He began working for Jefferson Feed in 1973, and he became the general manager in about 2005. Mr. Morvant confirmed that Zachary informed him by telephone of his back injury and of the need for surgery. He testified, however, that Zachary never told him the injury occurred at work while removing product from a truck, bringing it into the store, and stacking it. Zachary also never requested that Jefferson Feed pay for any of his medical treatment. Zachary told Mr. Morvant that his back injury was caused by damage from epileptic seizures he had during his childhood and the irregular curvature of his spine. Mr. Morvant also stated that he asked

Zachary on three different occasions if his back injury was work-related, and each time, Zachary denied that it was work-related. He testified that Jefferson Feed's first notice that Zachary was claiming a work-related injury to his back was when Jefferson Feed was served with the workers' compensation lawsuit.

According to Mr. Morvant, on December 6, 2019, Zachary came into the store for a meeting to discuss when he would be able to return to work. At this meeting, Zachary resigned from his position as store manager because he could no longer perform the duties of a store manager. He told Mr. Morvant he could no longer do any heavy lifting and was going back to school at the UNO. Due to his resignation, on December 6, 2019, Jefferson Feed terminated Zachary's pay. Mr. Morvant testified that Jefferson Feed continued to pay Zachary his salary after his surgery because Jefferson Feed was hopeful that he would return to work.

Before Jefferson Feed terminated Zachary's pay, Mr. Morvant communicated with Jefferson Feed's insurer, Hanover Insurance Group. The claims file indicates that Mr. Morvant first communicated via e-mail with Hanover regarding Zachary's condition on December 6, 2019. In this e-mail, Mr. Morvant informed Hanover that in September, Zachary was diagnosed with a bulging disc; that he never claimed it was a work-related injury; and that he thought it was from possible epileptic seizures when he was young. It also stated that Zachary had informed Mr. Morvant that he had to resign because he could no longer perform the duties of a manager and was going back to school at UNO. In the e-mail, Mr. Morvant stated that Jefferson Feed discussed with Zachary the possibility of him working in a different position, such as a cashier or in the purchasing capacity. He requested advice regarding payroll payments and eliminating future liability and workers' compensation exposure if Jefferson Feed continued to employ Zachary in a different capacity.

In response, Hanover suggested that Jefferson Feed have Zachary complete a "second injury" form, acknowledging his pre-existing injury or condition so that

Jefferson Feed and Hanover are protected should Zachary injury himself on the job in his new position. Hanover also informed Mr. Morvant that Jefferson Feed could pay Zachary a different salary once he transitioned into the new position. Mr. Morvant testified at trial that the purpose of these communications was to discuss potential exposure if Zachary returned to work in a different position and injured himself again.

After Zachary filed his disputed claim form on January 28, 2020, Mr. Morvant reported Zachary's injury to Hanover as a workers' compensation claim on February 6, 2020. In that notice, Mr. Morvant informed Hanover that an ex-employee has alleged he hurt his back while working on September 25, 2019, that the employee did not inform Jefferson Feed of a work-related incident, and that Jefferson Feed was informed the ex-employee had a pre-existing/ongoing childhood condition for which he was receiving treatment.

Zachary introduced Dr. Ware's deposition in support of his claim that his injury occurred at work. Dr. Ware confirmed that Zachary did not relate to him a specific event where he was injured or tell him that the injury occurred at work. During Dr. Ware's deposition testimony, he responded to questions indicating that obesity, scoliosis, and/or an epileptic seizure could cause or increase the risk of a disc herniation. Dr. Ware, however, also stated that Zachary regularly lifting 40 pounds over his head for any period of time would likely be related to his injury and that "it is more convincing to me that the sum total of repetitive lifting had more to do with this [Zachary's back injury] than a singular event on one day." Dr. Ware last examined Zachary in February 2020.

Although Dr. Ware was no longer treating Zachary in July 2020, Dr. Ware wrote a letter regarding Zachary's condition at Zachary's request. Zachary indicated to Dr. Ware that his job required heavy lifting and that he did not believe he could do it, so he requested that Dr. Ware prepare a letter.

The letter requested of Dr. Ware on July 10, 2020 stated the following:

> Mr. Zachary Flores is under my care. It is my understanding that his job requires lifting heavy items, including overhead. Given the timing of the patient's onset of symptoms and his clinical presentation, it is more likely than not that his annular tear and disc extrusion were related to his heavy lifting at work.
>
> In the future, he should be restricted from lifting more than 30 lbs and repetitive bending / squatting / stooping.

Defendants retained Dr. Todd, an orthopedic surgeon with a spinal surgery specialization to review Zachary's medical records and offer his opinion regarding the cause of his injury. Dr. Todd did not examine Zachary or speak with him in evaluating case but reviewed his extensive medical records. Based on Zachary's medical records, Dr. Todd noted that Zachary failed to inform medical providers of any specific onset of pain or injury with which his back pain could be associated, as well as that Zachary had some previous episodes of back pain. He determined from the medical records that Zachary's injury could not be related to a specific date, time or activity, and that there was no specific injury for the onset of pain. During his deposition, Dr. Todd recognized that at the emergency room at Chabert Medical Center on October 9, 2019, Zachary indicated he had been suffering from lower back pain shooting down both legs for two weeks, that the pain was "gradual and sudden," and that a possible cause of his pain was from his job where he has to lift up heavy bags.

Dr. Todd testified that Zachary's obesity could be related to his back injury because morbidly obese individuals have a much higher rate of back pain and degenerative disc disease, and are at a higher risk of sustaining a disc herniation. Dr. Todd opined that Zachary's herniated disc likely occurred spontaneously and was not related to his work or a work-related injury. Dr. Todd based his opinion on

Zachary's failure to report a specific onset of pain, such as a pop, a pull, or some pain, while lifting.

Following trial on the merits, the workers' compensation court ruled in favor of defendants, Jefferson Feed and Hanover, finding that Zachary failed to prove he sustained an accident, an injury, or a disability in the course of his employment, and that he was not entitled to any workers' compensation benefits.

## LAW and ANALYSIS

Zachary asserts that the workers' compensation court erred in (1) giving greater weight to the testimony of defendant's medical expert than his treating neurosurgeon; (2) denying him benefits under the Louisiana Workers' Compensation Act based on the lack of a sudden precipitous event; (3) finding Mr. Morvant's testimony more credible; and (4) finding that Zachary's claim was "reasonably controverted" and denying him penalties and attorney's fees. For the reasons that follow, we affirm the judgment of the workers' compensation court.

### Standard of Review

Louisiana jurisprudence indicates that the appellate courts review a workers' compensation court's findings of fact under the manifest error or clearly wrong standard. Loar v. Luba Worker's Comp Terminix Serv. Co., Inc., 17-683 (La. App. 5 Cir. 9/19/18), 254 So.3d 1267, 1273. The workers' compensation court's determinations as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless they are manifestly erroneous or clearly wrong. Brown v. Entertainment Partners, LLC, 19-118 (La. App. 5 Cir. 10/2/19), 279 So.3d 1057, 1064. Under this standard, in order to reverse the workers' compensation court's factual finding, the appellate court must find from the record that a reasonable factual basis does not exist for the workers' compensation court's finding and that the finding is clearly wrong. Id.; Forbes v. Metropolitan

Developmental Center, 09-901 (La. App. 5 Cir. 3/9/10), 35 So.3d 377, 382. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

**Workers' Compensation Law**

In a workers' compensation case, the employee bears the burden of proving an accident occurred, it occurred in the course and scope of his employment, the accident caused his injury, and the injury caused his disability. Summers v. Ritz-Carlton New Orleans, 14-800 (La. App. 5 Cir. 5/28/15), 171 So.3d 329, 335, writ denied, 15-1256 (La. 9/25/15), 178 So.3d 569; Guevara v. Brand Energy & Infrastructure Servs., 13-331 (La. App. 5 Cir. 10/30/13), 129 So.3d 625, 631, writ denied, 13-2782 (La. 2/14/14), 132 So.3d 964. A workers' compensation claimant has the burden of establishing that a work-related accident occurred by a preponderance of the evidence. Jimmerson v. Johnson Storage & Moving Co., 13-962 (La. App. 5 Cir. 5/14/14), 142 So.3d 111, 115. The LWCA defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an "accident" within the meaning of La. R.S. 23:1021(1). Rostrop v. Gray Ins. Co., 12-554 (La. App. 5 Cir. 4/10/13), 115 So.3d 535, 539.

Courts may presume that an employee's work-related accident caused his disability when the employee proves that before the accident, he had not manifested his disability symptoms; that commencing with the accident, his disability symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition. Gabriel v. Delta Air Lines, Inc., 12-428 (La. App. 5 Cir. 1/30/13), 106 So.3d 1285, 1293, writ denied, 13-0917 (La. 5/31/13), 118 So.3d 399. In determining whether the employee has discharged his burden of proof, the workers' compensation court should accept as true a witness' uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Id. An employee may corroborate his testimony concerning the accident with objective medical evidence or testimony from fellow workers. Id.

**Entitlement to Benefits**

Zachary claims that the workers' compensation court erred in denying him workers' compensation benefits based on the lack of proof of a sudden precipitous accident or event. Zachary relies on case law awarding benefits where the "actual, identifiable, precipitous event" is actually a routine movement or task that the claimant regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury. Begue v. Crossover, Inc., 03-267 (La. App. 1 Cir. 11/21/03), 868 So.2d 100; and Thomason v. Wal-Mart Stores, Inc., 37,520 (La. App. 2 Cir. 9/4/03), 852 So.2d 1283, 1287, writ denied, 03-2774 (La. 12/19/03), 861 So.2d 573. Zachary argues that the workers' compensation court erred in requiring him to identify a precise moment when a work-related injury occurred and excluding his work-related gradual and degenerative process as a compensable event.

The workers' compensation court stated the following in the reasons for judgment:

> In the instant case, the medical records show various potential causes for Claimant's back pain. The records show that he has suffered seizures, that he is morbidly obese, and that he has scoliosis. Defendant's SMO doctor opined that Claimant's injury would have caused an immediate onset of pain. He pointed out that Claimant consistently denied an immediate onset of pain at work. Additionally, Claimant's treating physician testified that all of Claimant's conditions could cause back pain. He further testified that Claimant never reported having a work accident. There was no report of an identifiable event. Upon hearing the testimony and reviewing the evidence, the Court finds that the Claimant is unable to prove an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently. Claimant also provided no evidence to show that he was involved in an accident, which aggravated, accelerated, or combined with the pre-existing condition to produce an injury resulting in a compensable disability.

Upon review, the reasons for judgment indicate the workers' compensation court's focus was on the totality of the circumstances in this case, particularly the lack of proof of causation, *i.e.*, the lack of evidence establishing that Zachary's injury was work-related, and not solely on the lack of "an unexpected or unforeseen actual, identifiable, precipitous event." For the following reasons, we find no error in the workers' compensation court's denial of benefits to Zachary.

We first point out that although Zachary's injury and/or back pain commenced on September 26, 2019, the record indicates that he did not seek benefits from work for his injuries until four months later when he filed a disputed claim form on January 28, 2020. Based on the testimony at trial and the evidence in the record, Zachary never informed Jefferson Feed that his back injury was work-related nor requested that Jefferson Feed pay for his medical expenses until he filed his disputed claim form. By his own testimony, the record established that Zachary was aware of the process of reporting a workers' compensation claim because he created the form used to report a workplace injury at Jefferson Feed. Despite this knowledge, he never completed a form to report his own injury.

Not only did Zachary fail to file an incident report or a claim for four months, according to Mr. Morvant's testimony, Zachary repeatedly informed him that his back injury was not work-related. Mr. Morvant's December 6, 2019 e-mail to Jefferson Feed's insurance agent shows that Mr. Morvant believed based on statements from Zachary, that Zachary's back injury was caused by childhood epileptic seizures. In addition, the Hanover claims file indicates that Mr. Morvant first reported Zachary's injury to Hanover as a workers' compensation claim in February 2020, after Zachary filed his disputed claim form.

Zachary also did not tell Dr. Ware, his treating neurosurgeon, that his back injury was work-related. Dr. Ware's October 16, 2019 progress note after first examining Zachary indicates Zachary informed Dr. Ware that he worked at Jefferson Feed, but not that his injury occurred at work. Dr. Ware did not document that Zachary's back injury was work-related until July 10, 2020, almost nine months after first examining Zachary. The July 10, 2020 letter states,

> Mr. Zachary Flores is under my care. It is my understanding that his job requires lifting heavy items, including overhead. Given the timing of the patient's onset of symptoms and his clinical presentation, it is more likely than not that his annular tear and disc extrusion were related to his heavy lifting at work.

When Dr. Ware wrote this letter, he had not examined Zachary since February 2020. At the time of the July 2020 letter, Zachary no longer had a job requiring heavy lifting because after his surgery, he could no longer perform that type of work. In addition, Dr. Ware's conclusion that Zachary's back injury was "more likely than not" related to his heavy lifting at work appears to be assumed based on the timing of when it occurred. Although Dr. Ware also refers to Zachary's clinical presentation in relating his injury to his work, he does not provide any specific facts, an explanation, or a basis in this regard, which would support reliance thereon. As a result, Dr. Ware's July 10, 2020 letter is conclusory, and it is within the purview of the trier of fact, to weigh this evidence as appropriate. Further, in his deposition,

Dr. Ware agreed that Zachary's seizures, obesity, and scoliosis could all contribute, cause, and/or increase the risk of Zachary's back injury. Thus, the record suggests that Dr. Ware's statements relating Zachary's back injury to his work were uncertain.

Nonetheless, Zachary asserts that the workers' compensation court erred by giving greater weight to defendant's medical expert, Dr. Todd, who never examined him, than to his treating neurosurgeon, Dr. Ware.

A fact finder may give different weights to expert testimony depending on their qualifications and the facts supporting their opinions. Mendez v. Reg'l Transit Auth. (TMSEL), 13-297 (La. App. 5 Cir. 11/19/13), 130 So.3d 352, 355. For example, courts generally give more weight to a treating physician's opinion than a non-treating physician's opinion. Id. A treating physician has the opportunity for repeated examinations and sustained observation of the plaintiff; thus, courts give his testimony greater weight than that of a physician seen for litigation purposes. Sino v. Chalmette Gen. Hosp., 489 So.2d 311, 313 (La. App. 4th Cir. 1986).

Credibility determinations, including evaluating expert witness testimony, are for the trier of fact. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-201 (La. 10/19/99), 748 So.2d 417, 421. The trier of fact is in a better position to evaluate live witnesses, as compared with the appellate court's access to a cold record. Guillory v. Lee, 09-75 (La. 6/26/09), 16 So.3d 1104, 1117. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. McKamey v. Carona, 14-388 (La. App. 5 Cir. 3/11/15), 169 So.3d 449, 458, writ denied, 15-0723 (La. 6/1/15), 171 So.3d 933.

The record indicates the neither Dr. Ware nor Dr. Todd testified at trial, but their respective depositions and the medical records relating to Zachary's treatment were introduced into evidence. Dr. Ware opined that Zachary regularly lifting 30 to 40 pounds over his head for any period of time would likely be related to his injury and that "it is more convincing to me that the sum total of repetitive lifting had more to do with this [Zachary's back injury] than a singular event on one day." However, Dr. Ware also indicated that obesity, scoliosis, and/or an epileptic seizure could cause or increase the risk of a disc herniation.

Dr. Todd opined that Zachary's herniated disc likely occurred spontaneously, and that it was not related to his work or a work-related injury. Dr. Todd based his opinion on Zachary's failure to report a specific onset of pain, such as a pop, a pull, or some pain, while lifting. Dr. Todd also noted that Zachary had pre-existing back pain and that he was morbidly obese, which put him at a much higher risk of sustaining a herniation because of the strain on his lumbar spine.

As indicated by the reasons for judgment, the workers' compensation court considered the testimony of both Dr. Ware and Dr. Todd. Dr. Todd's opinion was more definitive that Zachary's injury was not work-related, while Dr. Ware's opinion seemed to indicate there were various possible causes of Zachary's injury based on the number of health-related issues Zachary faced. In addition, the medical records from Dr. Ware's treatment records do not reflect that Zachary claimed his injury was work-related.

Considering the circumstances of this case and the discretion afforded to the trier of fact and the burden of proof on the claimant, we cannot say the workers' compensation court was manifestly erroneous or clearly wrong in rendering judgment consistent with Dr. Todd's opinion.

Zachary also asserts the workers' compensation court erred in finding Mr. Morvant's testimony more credible. In support, Zachary relies on e-mails between

Mr. Morvant and Jefferson Feed's insurance agent regarding Zachary's condition and whether he should complete a second injury form if he continues working at Jefferson Feed in another position. Mr. Morvant sent the December 6, 2019 e-mail to Jefferson Feed's insurance agent after Zachary told him that he would no longer be able to perform his duties as store manager, and that he was returning to UNO for school in the spring of 2020. Mr. Morvant testified that the purpose of this communication was to discuss potential exposure if Zachary returned to work in a different position and injured himself again. Mr. Morvant indicated in this e-mail that Zachary had informed him the back injury was related to damage from possible epileptic seizures when he was younger, and that Zachary never claimed the injury was work-related.

The record supports that Mr. Morvant believed that Zachary's injury was not work-related and that Zachary did not claim it was work-related until he filed his disputed claim form. In his testimony, Mr. Morvant reiterated that Zachary never informed him that his back injury was related to work, and that Zachary told him his injury was caused by epileptic seizures when he was younger. Mr. Morvant's communications with Jefferson Feed's insurance agent reflected that this was his understanding. In addition, although Mr. Morvant was aware that Zachary had hurt his back and had surgery, he testified that Zachary denied on multiple occasions that his back pain was work-related. Mr. Morvant also testified that Jefferson Feed continued to pay Zachary his salary while he was out for his surgery and recovering because Jefferson Feed was hopeful he would be able to return to work.

Zachary further claims that Mr. Morvant's testimony on the termination of his employment with Jefferson Feed was inconsistent. Mr. Morvant testified that Zachary resigned on December 6, 2019 because he could not work at Jefferson Feed anymore and he was going to be a full-time student at UNO. Other evidence supports this testimony. Mr. Morvant's e-mail to Jefferson Feed's insurance agent

on December 6, 2019 is consistent with his testimony in that it indicates Zachary had informed Mr. Morvant he could no longer handle his responsibilities as a store manager and that he was returning to school. Zachary also testified that he applied to UNO in November 2019 after his surgery and before he resigned from Jefferson Feed.

A claimant can meet his burden of proving a work-related accident by his own uncontradicted testimony "absent circumstances casting suspicion on the reliability of this testimony." Rostrop, 77 So.3d at 388. The record shows that there are inconsistencies in and contradictions to Zachary's testimony, which could cast suspicion on the reliability of his testimony. In light of the foregoing and the vast discretion afforded the trier of fact in making credibility determinations, we cannot say the workers' compensation court was clearly wrong in giving greater weight to Mr. Morvant's testimony.

Considering the testimony and evidence presented, we find no manifest error in the workers' compensation court's finding that Zachary did not meet his burden of proving that he sustained an accident, an injury, or a disability in the course of his employment, and thus denying him workers' compensation benefits.

Finally, Zachary claims that the workers' compensation court erred in finding that Zachary's claim was "reasonably controverted" and that he was not entitled to penalties and attorney's fees. Considering our findings herein that Zachary did not carry his burden of proof, we find no error in the denial of penalties and attorney's fees to Zachary.

**DECREE**

For the foregoing reasons, we affirm the workers' compensation court's judgment finding Zachary did not maintain his burden of proving that his injury was in the course and scope of his employment and denying him workers' compensation benefits.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-235

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
DONALD F. DEBOISBLANC, JR.          DONALD F. DEBOISBLANC, SR.          DORIS T. BOBADILLA (APPELLEE)
(APPELLANT)                         (APPELLANT)
KELSEY L. BONNAFFONS (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED